IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Dion Orlando Taylor, | ) | C/A No. 0:10-50-HMH-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| John Ozmint, Director; Lt. John Mitchell; Lt. Jim Gibson; Bernard McKie, Warden, all in their individual capacities, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Dion Orlando Taylor ("Taylor"), a self-represented state prisoner, filed this civil rights matter pursuant to 42 U.S.C. § 1983. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the defendants' motion for summary judgment. (ECF No. 107.) Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the court advised Taylor of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the defendants' motion. (ECF No. 108.) Taylor filed a response in opposition to the defendants' motion (ECF No. 112), and the defendants replied (ECF No. 113). Also before the court are several motions filed by Taylor. (ECF Nos. 99 & 117.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendants' motion for summary judgment should be denied.

**BACKGROUND**

At the time he filed the Complaint, Taylor was an inmate of Ridgeland Correctional Institution. The incidents that are the subject of his Complaint occurred when he was incarcerated at Kirkland Correctional Institution. Taylor contends that while at Kirkland, Defendants Mitchell

and Gibson violated his constitutional rights by using excessive force during an altercation stemming from Taylor's violation of the "no-talk" rule in the cafeteria line. Specifically, Taylor alleges that when he was reprimanded for talking, Taylor threw a plastic cup at the wall in frustration. Defendants Gibson and Mitchell then allegedly choked him and bent his leg back, resulting in a knee injury. Following this incident, Taylor further contends that he was placed alone in a cell for five days with no clothing, mattress, or blankets.[1]

## DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over

---

[1] By previous order, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, denied in part the defendants' motion to dismiss (ECF No. 14) with respect to Taylor's claim of excessive force against Defendants Gibson and Mitchell in their individual capacities and his claim of deliberate indifference based on his conditions of confinement against the defendants in their individual capacities. (ECF No. 72.) The order dismissed all other claims.



facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(c), (e); Celotex Corp., 477 U.S. at 322. Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Cruz v. Beto, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**B.    Eighth Amendment Claims**

    **1.    Excessive Force (Defendants Mitchell and Gibson)**

The Eighth Amendment to the United States Constitution expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The " 'core judicial inquiry' " in an excessive force claim under the Eighth Amendment is " 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.' " Wilkins v. Gaddy, 130 S. Ct. 1175 (2010) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). "[N]ot . . . every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, 503 U.S. at 9. However, " '[w]hen prison officials maliciously and sadistically use force to cause harm,' . . .



'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.' " Wilkins, 130 S. Ct. 1175 (quoting Hudson, 503 U.S. at 9).

When analyzing excessive force claims, courts should consider factors such as (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. Whitley v. Albers, 475 U.S. 312, 321 (1986). Courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." Id. at 321-22. The Supreme Court has recognized that prison officials work in an environment where there is an ever present potential for violence and unrest, and that courts should not substitute their judgment for that of the officials who must make a choice at the moment when the application of force is needed. Id. The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." Id. at 322.

According to Defendant Gibson, on June 11, 2009 Gibson observed Taylor curse and throw a cup at Defendant Mitchell in response to Defendant Mitchell ordering Taylor to a holding cell. (Gibson Aff. ¶¶ 6-7, ECF No. 107-4 at 3.) Gibson states that, due to Taylor's defiant and aggressive behavior, Gibson was concerned for his safety and the safety of other prison officials, and also



believed Taylor to be a security risk. (Id. at ¶¶ 8-10, ECF No. 107-4 at 3.) Gibson avers that he took necessary actions to subdue and restrain Taylor, but that these actions were not excessive and were not done with malicious intent. (Id. at ¶¶ 11-12, ECF No. 107-4 at 3.)

Taylor disputes Gibson's version of events. Specifically, he states that when Mitchell ordered him to the holding cell, Taylor threw his cup at the "floor/wall"—rather than at Mitchell—and turned to go to the holding cell as directed. (ECF No. 112 at 3.) Taylor also declares that after Gibson forced him to the floor and directed Taylor not to move and to extend his arms, Taylor complied. (Taylor Decl., ECF No. 112-13 at 2.) Taylor argues that after he was compliant, Gibson began to choke him and Mitchell grabbed and injured Taylor's leg. (Id. at 3.) Taylor disputes that he was a threat, states that he was "never aggressive," and asserts that Gibson and Mitchell acted with malicious intent. (Id.)

Applying the Whitley factors and viewing the facts in the light most favorable to Taylor, the court cannot say as a matter of law that the force used against Taylor complied with the Constitution. In his affidavit, Defendant Gibson states that he observed Taylor behaving defiantly and aggressively towards prison guards and specifically states that he observed Taylor curse and throw a cup at Lt. Mitchell. (Gibson Aff. ¶¶ 6-8, ECF No. 107-4 at 3.) Taylor declares, however, that during his disciplinary hearing for this alleged offense, Gibson admitted that, contrary to what he wrote in his disciplinary report, he did not see Taylor throw the cup at Mitchell. (Taylor Decl., ECF No. 112-13 at 1.) Taylor contends that as a result of Gibson's testimony, Taylor's charge of "threatening to inflict harm" was reduced to "disrespect." (Id.) Gibson avers that he considered Taylor to be a security risk, that he took actions to subdue and restrain Taylor, and that these actions were not excessive or taken with malicious intention. This conclusory statement does not provide any details



as to the specific actions taken. (Gibson Aff. ¶¶ 10-12, ECF No. 107-4 at 4.) Taylor, by contrast, avers that after he threw the cup at the wall, Gibson immediately grabbed him and Taylor turned around and put his hands up with his back toward Gibson. (Taylor Decl., ECF No. 112-13 at 2.) Taylor declares that Gibson then forced him to the floor and gave Taylor the directives to not move and to extend his arms from his body, with which Taylor avers he complied. (Id.) Taylor then avers that Gibson began to choke him by placing his forearm across Taylor's neck and bending it backwards. (Id. at 2-3.) Taylor declares that Defendant Mitchell then grabbed Taylor's legs, bending one back to Taylor's neck and injuring Taylor's knee. (Taylor Decl., ECF No. 99-1 at 1; Taylor Decl., ECF No. 112-13 at 3.) The record does not contain a sworn statement from Defendant Mitchell.

If a jury credits Taylor's version of events and believes that he did not throw the cup at Mitchell and that he complied with Gibson's and Mitchell's instructions, it could reasonably find that Gibson and Mitchell's use of force was not a good faith effort to restore and maintain prison discipline but rather was used maliciously and sadistically to cause physical harm. See Wilkins, 130 S. Ct. at 1178. Therefore, the defendants' motion for summary judgment must be denied regarding Taylor's excessive force claim.

   **2. Deliberate Indifference—Conditions of Confinement**

Taylor also alleges that his constitutional rights were denied when he was placed in administrative segregation following the incident in the cafeteria. "The Constitution does not mandate comfortable prisons;" however, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotations and citations omitted). To state a claim



that conditions of confinement violate constitutional requirements, "a plaintiff must show 'both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991)). To demonstrate that the conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and [taking] reasonable measures to guarantee the safety of the inmates." Farmer, 511 U.S. at 832. As to the second prong, a prison official is deliberately indifferent if he has actual knowledge of a substantial risk of harm to a prisoner and disregards that substantial risk. Id. at 847; see also Parrish v. Cleveland, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). Further, a plaintiff must demonstrate that he suffered a serious or significant physical or mental injury as a result of the challenged condition. See Strickler, 989 F.2d at 1380-81. However, "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e).

The cell conditions of which Taylor complains occurred during a five-to-six-day period following the incident with Defendants Gibson and Mitchell. The defendants state that, following the incident, Taylor was placed in a cell in the Special Management Unit ("SMU") pending his disciplinary hearing. (See Defs.' Mem. Supp. Summ. J., ECF No. 107-1 at 2; ECF No. 107-3 at 2-6.) Defendant McKie provides an affidavit in which he states that he "ha[d] knowledge of the standards and regulations relating to the conditions of the cells as outlined by the South Carolina Department



of Corrections" and that "the conditions existing at Kirkland Correctional Institute at the time complained of in [Taylor]'s Complaint were appropriate and in accordance with the standards and policies established by the South Carolina Department of Corrections [("SCDC")]."  (McKie Aff. ¶¶ 5-6, ECF No. 107-6 at 2-3.)  He further asserts that Taylor's confinement was in compliance with SCDC policy.  (Id. at ¶ 9, ECF No. 107-6 at 3.)

Taylor declares that he was held in SMU for five or six days clothed only in his underwear with no mattress, blanket, or (unspecified) hygiene products.  (Taylor Decl., ECF No. 112-12 at 2.)  He further avers that his cell was so cold that he could "visibly [see] his breath."  (Id., ECF No. 112-12 at 2.)  Taylor states that after five or six days, he was issued a jumpsuit, mattress, and soap.  (Am. Compl., ECF No. 52-4 at 4.)  Taylor alleges that his condition was authorized "per order of the Warden," and that, as a result of having to endure these conditions for multiple days, Taylor's knee injury and mental health condition were adversely affected.  (Taylor Decl., ECF No. 112-12 at 2 & ECF No. 112-14 at 2.)

Taylor appears to be asserting his claim concerning the conditions of confinement against Defendants McKie and Ozmint.  Taylor declares that Defendant McKie ordered him and/or authorized him to be placed in such conditions; however, there is no such allegation against Defendant Ozmint.  It appears that Taylor is only raising this claim against Defendant Ozmint based on a general allegation that Ozmint failed to supervise his employees and because he was the director of SCDC.  Accordingly, this claim fails against him as a matter of law.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94 (1978) (indicating that a claim based upon the doctrine of respondeat superior does not give rise to a § 1983 claim); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that

each Government-official defendant, through the official's own individual actions, has violated the Constitution.").[2]

With regard to Taylor's claim against Defendant McKie, as stated above, the defendants have presented evidence concerning the average outdoor temperature during the month that Taylor was subjected to the above-described conditions and an affidavit from Defendant McKie essentially attesting that the conditions of Taylor's cell complied with SCDC's standards and policies. However, the affidavit does not address the internal temperature in Taylor's cell or describe what the SCDC standards and policies regarding internal cell temperature are. On February 7, 2011, the Honorable Henry M. Herlong, Jr., Senior United States District Judge, denied the defendants' motion to dismiss this claim finding that, liberally construed, Taylor's Complaint had stated a claim for deliberate indifference with regard to his cell conditions. Notwithstanding this ruling, the defendants have failed to present any evidence in support of their motion for summary judgment refuting Taylor's allegations, which he has now supported with a declaration stating that the internal temperature in his cell was so cold he could see his breath.[3] Nor have they presented evidence regarding Taylor's declaration that the cold conditions aggravated his knee injury. Taking the

---

[2] As the Iqbal Court observed, because masters do not answer for the torts of their servants in § 1983 cases, "the term 'supervisory liability' is a misnomer." Iqbal, 129 S. Ct. at 1949. Indeed, the dissent in Iqbal opined that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating [ ] supervisory liability entirely." Id. at 1957 (Souter, J., dissenting). Moreover, even if the majority in Iqbal did not entirely dispense with the concept of liability of a supervisor in a § 1983 case, the instant Amended Complaint fails entirely to plead facts sufficient to go forward on such a theory based on Fourth Circuit precedent. See Carter v. Morris, 164 F.3d 215, 221 (4th Cir. 1999); Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (outlining the requirements to hold a supervisor liable for constitutional injuries inflicted by their subordinates).

[3] The credibility of Taylor's statement in the face of the defendants' evidence showing hot, outdoor temperatures is a question for the jury.



evidence in the light most favorable to Taylor—including Taylor's uncontroverted declarations that the temperature *inside* his cell was frigid; that he was without clothing, blankets, and a mattress; and that the conditions adversely affected his knee injury—Defendant McKie has failed to demonstrate that he is entitled to judgment as a matter of law.

### C.     Other Motions

Also pending before the court is Taylor's motion for a declaratory judgment (ECF No. 99), which appears to seek injunctive relief. To the extent that Taylor seeks for this court to order that arrest warrants be issued for several of the defendants in connection with the allegations in his Complaint, such relief is not available. See Lopez v. Robinson, 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution."). Accordingly, this motion should be denied.

Taylor has also filed a motion that appears to raise new claims. (ECF No. 117.) These claims appear to be unrelated to the claims currently pending before the court. Further, a motion to amend his Complaint would be untimely per the scheduling order in this case. Therefore, this request should be denied. In this motion, Taylor also requests an extension of time and access to his legal materials. In light of the court's determination that the defendants have failed to demonstrate that they are entitled to judgment as a matter of law, these requests are moot. Accordingly, this motion should be denied. (ECF No. 117.)

*PJG*

**RECOMMENDATION**

Accordingly, the court recommends that the defendants' motion for summary judgment (ECF No. 107) be denied as to Taylor's claims of excessive force against Defendants Gibson and Mitchell and of deliberate indifference based on conditions of confinement against Defendant McKie and granted as to all other claims. It is further recommended that Taylor's motions (ECF Nos. 99 & 117) be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 7, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).